IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff/Respondent, | ) |
| | ) |
| v. | ) Criminal Case No. CR-98-00010-001-RAW |
| | ) |
| JOSHUA PRICE, JR., | ) |
| | ) |
| Defendant/Movant. | ) |

## ORDER

The Tenth Circuit Court of Appeals issued a published opinion last year in *United States v. Price*, 44 F.4th 1288 (10th Cir. 2022). [Doc. 499]. The Circuit reversed this court and remanded the case for reconsideration consistent with the opinion. *Id*. at 19. The Circuit concluded in part that Defendant "is eligible for a sentence reduction under the First Step Act and has standing to bring this argument because the district court may actually reduce his sentence." *Id*. at 18. The Circuit noted that "the district court was not *required* to impose a life sentence for Mr. Price's murder cross-reference because the Sentencing Guidelines are not mandatory," and "the district court has discretion to vary below the Guideline range for first-degree murder and sentence Mr. Price to less than life." *Id*. at 17 (emphasis in original). The mandate was issued on September 9, 2022. [Doc. 501]. On October 6, 2022, the court requested supplemental briefing from the parties. [Doc. 502]. On November 7, 2022, the court granted a joint motion for extension of time to file the supplemental briefs. [Doc. 504]. On November 28, 2022, the parties filed supplemental briefs. [Docs. 505 and 506]. The matter is ripe for ruling.

The Tenth Circuit, in an order and judgment filed in 2012, provided the following background of this case:

> In the summer of 1997, a task force comprised of the Federal Bureau of Investigation, the U.S. Marshal's Service, and the Muskogee Police Department was investigating cocaine trafficking in the Muskogee, Oklahoma area. The task force worked with an informant—Ebon Sekou Lurks—to gather information about Mr. Price, an alleged drug dealer. Mr. Lurks made numerous controlled drug purchases from Mr. Price.

While he was acting as an informant for the task force, Mr. Lurks was going through a divorce. Apparently angry about issues related to the divorce, Mr. Lurks's wife told Mr. Price that Mr. Lurks had been working as an informant with the FBI and that Mr. Lurks had recorded all of his drug transactions with Mr. Price. One week later, Mr. Lurks was murdered.

Suspecting that Mr. Price was involved in Mr. Lurks's murder, police obtained a search warrant for Mr. Price's residence. When they executed the warrant, the police found Mr. Price, a gun belonging to Mr. Price, and Mr. Price's blood-stained tennis shoes. DNA testing indicated there was a very high probability that the blood on Mr. Price's tennis shoes belonged to Mr. Lurks.

*United States v. Price*, 486 Fed.Appx. 727, 728-29 (10th Cir. July 2, 2012) (unpublished). [Doc. 453 at 2].

Defendant was charged in 1998 with numerous counts of drug and firearm-related crimes. He was not charged with the murder of Mr. Lurks. The Tenth Circuit, in the above-referenced order and judgment, further noted the following:

Before trial, the Government moved to admit out-of-court statements that Mr. Lurks made to FBI agents before he was murdered. The Government argued that Mr. Price waived any hearsay or Confrontation Clause objections to admission of these statements because he murdered Mr. Lurks, thereby ensuring his unavailability as a witness. After a hearing, the district court granted the Government's motion to admit Mr. Lurks's statements. It explained that "[Mr.] Price . . . [was] directly involved in the execution of . . . [Mr.] Lurks," ROA, Vol. 1, pt. 3, at 465, and that "[c]lear and convincing evidence" indicated as much, *id.* at 467. It thus held that "the statements made by [Mr.] Lurks should be admitted into evidence as [Mr.] Price] [has] waived [his] confrontation rights by causing the unavailability of [Mr.] Lurks." *Id.* at 469.

A jury convicted Mr. Price on all counts. The Government prepared a Presentence Report ("PSR") in anticipation of sentencing. The PSR grouped Mr. Price's convictions into two categories—the drug offenses ("Group 1") and the firearm offenses ("Group 2"). It calculated an offense level for each group and an offense level for a cross reference to first degree murder.

For the Group 1 offenses, the PSR used the base offense level of 34 because the total quantity of cocaine involved in the offenses was between 150 and 500 grams. *See* U.S.S.G. § 2D1.1(c)(3) (1998). It then added two levels for possession of a firearm, *see id.* § 2D1.1(b)(1), four levels for his role in the offense, *see id.* § 3B1.1(a), and two levels for obstruction of justice by procuring the absence of a witness (Mr. Lurks), *see id.* § 3C1.1. The resulting adjusted offense level for the Group 1 offenses was 42.

2

> For the Group 2 offenses, the PSR used the base offense level of 20 because Mr. Price had a prior felony conviction for a crime of violence. *See id.* § 2K2.1(a)(4)(A). It then added two levels because the firearms were stolen. *See id.* § 2K2.1(b)(4). The resulting adjusted offense level for the Group 2 offenses was 22.
>
> Combining the Group 1 and Group 2 offense levels, pursuant to section 3D1.4 of the Guidelines, the PSR arrived at a combined offense level of 42.
>
> **The PSR then included a cross reference to first-degree murder under section 2D1.1 of the Guidelines. The then-applicable version of section 2D1.1(d)(1) stated that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." In calculating the offense level for the first-degree murder cross reference, the PSR used the base level of 43 mandated by section 2A1.1 of the Guidelines. It then added three levels because the victim was working for the government. *See id.* § 3A1.2(a). The resulting adjusted offense level for the cross reference was 46.**
>
> The PSR thus calculated Mr. Price's total offense level to be 46. It determined his criminal history category to be II. Based on these calculations, the PSR recommended a sentence of life in prison.
>
> Mr. Price made numerous objections to the PSR, including an objection to the calculation of the total amount of cocaine base attributable to him. Mr. Price contended that he should not have been liable for 84.6 grams of the cocaine base, which would have decreased the total quantity of cocaine base attributable to him to approximately 120 grams, and would have led to a lower base offense level for his Group 1 drug offenses. Mr. Price also objected to the two-level increase for obstruction of justice based on procuring the unavailability of Mr. Lurks. Mr. Price did not object to the cross reference to first degree murder or the recommended sentence of life in prison.

*Price*, 486 Fed.Appx. at 729-30 (emphasis added in bold).  [Doc. 453 at 3-5].

Defendant was sentenced to life in prison by the Honorable Judge Frank H. Seay at a time when the sentencing guidelines were mandatory.  In particular, Defendant was sentenced to life imprisonment for his conviction on one count of drug conspiracy (Count 1), life imprisonment for each of his six convictions for distribution of cocaine base (Counts 2, 3, 4, 5, 6, and 8), 48 months for each of his 12 convictions for use of communication facility in committing a felony (Counts 9 through 20), and 120 months for each of his two convictions for possess firearm, moved interstate after felony conviction (Counts 21 and 22), with all sentences to run concurrently.  [Doc. 287]. The guidelines are now advisory.

3

The Government argues that the Circuit's most recent 2022 opinion "does not disturb this Court's holding that the first-degree murder Guideline determines the Guideline range." [Doc. 505 at 2]. Defendant's sentence, according to the Government, "continues to be based upon the cross-reference created by this Court's finding that Defendant caused the murder of a cooperating Government witness, Ebon Sekou Lurks, under circumstances which would constitute First Degree Murder." *Id*. at 2-3. The Government further contends that, "[o]n remand, the only issue is whether this Court will choose to exercise its discretion to reduce the life sentence previously imposed." *Id*. at 3. The court agrees with each of these arguments.

Defendant correctly argues that the Guideline range must be correctly calculated. [Doc. 506 at 2]. It is now apparent that the correct offense level for the first-degree murder cross-reference is 43, instead of 46. The victim, Mr. Lurks, was a government informant. But the PSR does not state the victim was a government officer or employee, or a former government officer or employee, or a member of the immediate family of a current or former government officer or employee, and three levels should not have been added to the offense level in the PSR. *See* U.S.S.G. § 3A1.2(a). The Government does not address within its supplemental brief whether the official victim guideline enhancement should have been applied. [Doc. 505 at 3]. Nevertheless, as noted in this court's prior order, "[e]ven assuming the correct offense level for the murder cross reference is 43, instead of 46, the guideline range is still life imprisonment." [Doc. 490 at 4].

Defendant next correctly points out that "the drug quantity was not submitted to the jury." [Doc. 506 at 3]. Defendant's jury trial took place in 1999 and he appealed. *United States v. Price*, 265 F.3d 1097 (10th Cir. 2001). Defendant sought relief, in part, based on *Apprendi v. New Jersey,* 530 U.S. 466 (2000), which was decided when Defendant's appeal was pending. Ultimately, Defendant's convictions and sentences were affirmed. *Price*, 265 F.3d at 1109. Agreeing with other circuits that had concluded U.S.S.G.§ 5G1.2(d) was a "mandatory provision," the Circuit noted that "there is no 'idle speculation' as to the sentence the district court could impose upon remand," and that the "district court would be required to impose twenty-year terms on Defendant's seven drug convictions and to run these sentences, as well as Defendant's sentences on the other convictions, consecutively, resulting in a total consecutive sentence of 208 years." *Id*. The Circuit explained that "[u]nder these circumstances, the Defendant's substantial rights were not affected by the *Apprendi* error." *Id*.

Pointing to the Circuit's opinion on his direct appeal, Defendant contends that he should have been sentenced under 21 U.S.C. § 841(b)(1)(C), which provides for a maximum sentence of twenty years for each of his seven narcotics convictions, and that the *Apprendi* error must be corrected. [Doc. 506 at 3-4]. In the most recent 2022 opinion, the Circuit provided the following guidance regarding Defendant's narcotic convictions:

> In the present case, both parties agree that Mr. Price is statutorily eligible for retroactive application of the Fair Sentencing Act. Mr. Price was originally sentenced under 21 U.S.C. § 841(b)(1)(A), which only applies where the defendant is charged with a specific drug quantity. But the Fair Sentencing Act requires that Mr. Price be sentenced under § 841(b)(1)(C) with a maximum sentence of twenty years because his superseding indictment contained no drug quantity.

*United States v. Price*, 44 F.4th 1288, 1293 (10th Cir. 2022). [Doc. 499 at 9]. Defendant is eligible for a sentence reduction under the First Step Act, and it is now clear that Defendant should be sentenced under § 841(b)(1)(C) with a maximum sentence of twenty years for each of his seven narcotics convictions. This brings the court to the central issue of contention.

The Government argues that, "even though each drug offense of conviction now carries a 20-year maximum penalty, the life sentence can be effectively upheld by imposing a maximum sentence of each of the seven counts to run consecutively." [Doc. 505 at 4]. The Government points out that the Circuit "has already recognized the possibility of imposing consecutive 20-year terms to yield a total term which would obviously exceed a term of life." *Id*. Citing *United States v. Lymon*, 905 F.3d 1149, 1152-1156 (10th Cir. 2018), the Government asserts that "[b]oth 18 U.S.C. [§] 3584 and U.S.S.G. [§] 5G1.2 authorize the imposition of consecutive sentences where the recommended Guideline exceeds the statutory maximum of any single count of conviction." *Id*.

In stark contrast, Defendant claims "[h]is sentences in Counts One through Six, and Eight, should be reduced to time served." [Doc. 506 at 1]. Defendant notes that "under the law of this case, this Court is not required to impose any of the sentences consecutively," and that "[t]his Court has the discretion to vary from the advisory Guidelines and impose a sentence of 20 years in all of the drug counts, concurrent to each other and all other counts." *Id*. at 4-5. Defendant contends a variance from the revised Guideline range is appropriate and should be granted. *Id*. at 5. He points out that "a minor variance of one offense level" leads to a sentencing range of 360

months to life, and that a downward variance of six levels leads to a range of 235 to 293 months. *Id*. at 9.  Defendant is now 52 years old.  *Id*. at 6.   He claims he "should have a chance at freedom rather than be condemned to die in prison," and that he "is at the age when recidivism rates decline for most people."  *Id*. at 7.  He plans to live with his elderly father "and help with bills, medical appointments, and home upkeep after release from prison."  *Id*.  He contends his father suffers from severe heart and lung damage.  *Id*.  Defendant argues that he has made strides toward rehabilitation.  *Id*. at 8.  He has worked in various assignments.  *Id*.  He acknowledges that his progress report lists four disciplinary incidents but notes he "has had no infractions since 2016." *Id*.  If a sentence of time served is not deemed appropriate, Defendant claims "the total sentence should be reduced to a term that requires only a few more years of imprisonment."  *Id*. at 11.

Both parties agree that the First Step Act does not provide Defendant with a right to a hearing or a right to address the court in person.  [Doc. 505 at 4; Doc. 506 at 10].  Still, Defendant claims "[a] sentencing hearing should be held at which [Defendant] can allocute."  [Doc. 506 at 10].  The Government argues that "no such hearing is required here given the extensive briefing history in this case and the still-justified life sentence."  [Doc. 505 at 4].  The court agrees with the Government.

Defendant's original Guideline range was life imprisonment.  Roughly 24 years have passed since Defendant was sentenced by Judge Seay.  The Guidelines are no longer mandatory, but the Guideline range has not changed.  Based upon the offense level of 43 (applying the first-degree murder cross-reference) and a criminal history category of II, the proper Guideline range remains life imprisonment.  The court has carefully considered whether it should vary below the Guideline range for first-degree murder and sentence Defendant to less than life.  The court declines to do so.

The court has considered Defendant's post-sentencing rehabilitation under 18 U.S.C. § 3553(a).  Defendant contends in his supplemental brief that he has reached an age when the risk of recidivism decreases.  [Doc. 506 at 7].  The court has reviewed Defendant's "Summary Reentry Plan - Progress Report," as well as the applicability report prepared by the U.S. Probation Office.  [Doc. 506-1; Doc. 477].  At 52 years old, he is now classified at a "low risk recidivism level" by the BOP.  [Doc. 506-1 at 1].  He also claims he has made "significant

strides toward rehabilitation." [Doc. 506 at 8]. The list of education courses *completed* by Defendant during his 24 years of incarceration is by no means extraordinary. [Doc. 506-1 at 2; Doc. 477 at 2]. The list shows he completed 48 hours of courses between 2008 and 2015. *Id*. Defendant further claims he has evolved into a compliant inmate, and that he can transition positively into society. [Doc. 506 at 9]. Such claims, however, are undermined by his disciplinary infractions. [Doc. 506-1 at 2; Doc. 477 at 2]. His infractions, spanning from 2005 to 2016, include one report of sexual proposal/threat and three reports of being insolent to a staff member. [Doc. 506-1 at 2; Doc. 477 at 2]. Defendant asserts that he is willing to provide care for his aging father who lives alone and is suffering from severe heart and lung damage. [Doc. 506 at 7]. Even assuming Defendant had shown others such as Defendant's siblings are unavailable to provide for Defendant's father's needs (he has not), Defendant's request for a sentence of time served must be denied in light of the § 3553(a) factors addressed herein.

The Government persuasively asserts that "Defendant's attempts to 'improve himself' pale in comparison to the abhorrent action of executing Ebon Sekou Lurks" to prevent him from testifying. [Doc. 505 at 6]. The Government notes the court has "already considered the § 3553(a) factors when imposing Defendant's sentence and such factors do not support Defendant's requested reduction." *Id*. The Government also contends that "Defendant's history compels a continued life sentence to adequately protect the public." *Id*. The Government reminds the court that "[i]n addition to his participation in this major drug conspiracy and his violent elimination of Mr. Lurks, the PSR indicated this was not his first violent act." *Id*.

Indeed, Defendant's history and characteristics are troubling. In 1989, Defendant pulled a handgun during an altercation at the Muskogee County Fairgrounds and fired several shots. PSR at ¶ 66. Two bystanders were hit by gunfire. *Id*. He was charged with Assault and Battery with a Dangerous Weapon, and Assault and Battery with a Deadly Weapon. *Id*. He pleaded guilty in 1990 to both counts. *Id*. He was already serving a sentence for Incite to Riot when pleas of guilty were entered in the case. *Id*. The sentence imposed for Incite to Riot was later reversed, and he was discharged from state prison in 1994. *Id*.

The PSR shows Defendant was arrested on five separate occasions between July of 1995 and January of 1998. *Id*. at ¶ 70. He was arrested in July of 1995 and charged with Assault and

7

Battery with a Deadly Weapon. *Id*. He was arrested in March of 1997 and charged with Drug Trafficking and Assault and Battery with a Dangerous Weapon. *Id*. He was arrested in April of 1997 and charged with Knowingly Concealing Stolen Property, Unlawful Use of Police Radio, and Transporting a Loaded Firearm. *Id*. He was arrested in October of 1997 and charged with Assault and Battery, Violation of Domestic Abuse Act. *Id*. He was arrested in January of 1998 and charged with Knowingly Concealing Stolen Property and Felonious Possession of a Firearm. *Id*. The charges associated with these five arrests were dismissed. *Id*.

The nature and circumstances of Defendant's federal offenses were <u>very</u> serious. This case involved over 205 grams of seized cocaine base, multiple accounts of drug distribution by or at the direction of Defendant in 1997, possession of stolen firearms by Defendant, controlled buys with the confidential witness, and ultimately, the murder of the confidential witness in January of 1998. PSR at ¶¶ 13-26.

Defendant cites *United States v. Powell*, No. 3:99-cr-264-18 (VAB), 2019 WL 4889112, 2019 U.S. Dist. LEXIS 171895 (D. Conn. Oct. 3, 2019), claiming the lower court's analysis is worthy of consideration. The case at hand, however, more closely resembles other cases where courts applied U.S.S.G. § 2A1.1, resulting in sentences of life imprisonment under the advisory guidelines. *See, e.g., United States v. Craig*, 808 F.3d 1249, 1257-58 (10th Cir. 2015) (application of murder cross-reference appropriate where death of co-conspirator, resulting from attempted robbery of rival drug dealer organized by defendant, was in furtherance of underlying conspiracy and thus was relevant conduct, and district court did not err in utilizing the cross-reference under U.S.S.G. § 2D1.1(d) to raise Defendant's base offense level to 43); *United States v. Rodriguez-Reyes*, 714 F.3d 1, 14 (1st Cir. 2013) (concluding that the district court's findings supported the application of first-degree murder cross-reference where attack on rival drug trafficking organization was intended to eliminate competition and protect the defendants' own drug trafficking activity); *United States v. Clay*, 579 F.3d 919, 929-30 (8th Cir. 2009) (application of murder cross-reference appropriate where murder of co-conspirator was reasonably foreseeable act in relation to drug conspiracy, and district court did not abuse its discretion in sentencing defendant to life imprisonment, a sentence within the properly calculated Guidelines range). Life imprisonment is an appropriate measure of punishment for Defendant under 18 U.S.C. § 3553.

As noted above, even without the official victim guideline enhancement, the proper Guideline range remains life imprisonment. Insofar as Defendant should be sentenced under 21 U.S.C. § 841(b)(1)(C) with a maximum sentence of twenty years for each of his seven narcotics convictions, the court will impose 20-year consecutive terms of imprisonment on each of Counts 1 through 6, and Count 8, for a total of 140 years. The sentence reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment. It also affords adequate deterrence to criminal conduct and protects the public from further crimes of the Defendant.

The court hereby directs the United States Probation Office to amend the Judgment to reflect a sentence of 20 years of imprisonment for Defendant's conviction on one count of drug conspiracy (Count 1), and 20 years of imprisonment for each of Defendant's six convictions for distribution of cocaine base (Counts 2, 3, 4, 5, 6, and 8), with all sentences to run consecutively with one another, for a total of 140 years in the custody of the Bureau of Prisons. On each of Counts 9 through 20, Defendant is committed to the custody of the Bureau of Prisons to be imprisoned for a term of 48 months; and, for a term of imprisonment of 120 months on each of Counts 21 and 22. The terms of imprisonment imposed on Counts 9 through 22 are to run concurrently with each other and concurrently with the terms of imprisonment imposed on Counts 1 through 6 and Count 8. All other terms and conditions previously imposed on June 29, 1999, shall remain in effect. *See*, Original Judgment [Doc. 287].

It is so ordered this 10th day of July, 2023.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA